# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CASE NO. 4:04CR28 |
| | § | (Judge Schneider/Judge Bush) |
| TIMOTHY E. SOUTHWELL (03) and | § | |
| ROBERT BESHIRS (01) | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

      On referral by the United States District Judge, the undersigned conducted a hearing to determine the proper amount of restitution that should be assessed to the Defendants, Robert Beshirs ("Beshirs") and Timothy Southwell ("Southwell"). Both defendants entered into a scheme to take inventory from Cricket Communications ("Cricket"), or its distributor, and resell such phones to a third party, Cellular Distributor, Inc. ("CDI"). The phones were shipped to the Defendants' employer, Trillium Industries, Inc. ("Trillium") and either categorized as Beyond Repair ("BER") or were refurbished. After the phones were refurbished, the phones or kit parts from new phones would be assembled and shipped back to Cricket or its customers. However, Beshirs and Southwell formed a company called Tri Communications ("Tri-Com") and actually sold inventory to CDI. They were paid a "commission" on the sale of such phones. Rodney Connor, an agent with the Internal Revenue Service, testified that the gain to Beshirs and Southwell was $1,463,577.00 as "commissions" paid by CDI. The Government and the Defendants agree that an additional amount of $247,000.00 is owed as restitution by both Defendants resulting from a scheme to embezzle money from Willis N.A.

Mr. Jim Ball, the Director of Procurement for Cricket, testified that the 85,000 non-BER phones were stolen by the Defendants and sold to CDI.  The question for the Court to resolve is the proper amount of restitution.  The Defendants argue that the amount is the total sum received by the Defendants plus $247,000.00 paid to them by Willis N.A.  Defendants objected to Cricket offering any evidence as to the amount of loss sustained by Cricket.  Defendants, with little or no authority, state that Cricket has no standing to put on such testimony.  The Court overrules that objection.  The Defendants also argue that Cricket should be bound by its initial calculation of 29,708 phones stolen in Defendants' fraudulent scheme.  This is the number first identified by Cricket in its demand letter sent in the civil action.  The Court notes, for the benefit of the District Judge, that the Defendants have not cooperated in the attempt to gather a realistic estimate of the loss sustained as a result of their fraud.  To the extent this should weigh on the Court's decision of whether these Defendants have accepted responsibility for their actions, the undersigned believes that they should receive no such credit.

According to the testimony of Mr. Good, a forensic accountant, Defendants embezzled or stole approximately 150,000 phones.  It appears that the Defendants received commissions on non-BER phones.  The number of non-BER phones stolen was approximately 85,000.  This figure was arrived at by examining the records of Tri-Com and some records from CDI.  CDI was not cooperative in the civil action and did not produce all records reflecting the transactions.  The Court believes that both Defendants have not been candid as to the full extent of their complicity.

The Court finds that 85,000 phones is a reasonable estimate.  The Defendants were unable to produce any documentation refuting this figure other than an initial demand letter from Cricket.  Of course, that letter was written well prior to when the full extent of the scheme was

known.  The Defendants were paid a commission for their illicit conduct.  Mr. Good also testified that CDI's average resale price of a Cricket, non-BER phone was $41.94.  He was able to determine that there was approximately a 25% profit margin on the Cricket phones sold by CDI.  He also testified that the average cost to refurbish the phones would be approximately $19.00 per phone had Cricket had to pay for the refurbishing of the phones.  Therefore, the Court finds that $22.94  per phone was the actual loss sustained by Cricket.  Mr. Good also testified that approximately $6,398.00, in the Tri-Com account, came from sources other than the sale of Cricket phones.  The Court finds that the Defendants should receive a credit for this amount.  After multiplying the net sales price after allowance for refurbishing and the credit noted above, times the sum of 85,000 (the number of non-BER phones stolen), the Court finds that the restitution should be $1,943,502.00  plus the $247,000.00 embezzled from Willis N.A. for a total restitution sum of $2,190,502.00.

## RECOMMENDATION

Based upon the foregoing, the Court RECOMMENDS that the Defendants be assessed a restitution amount in the sum of $2,190,502.00.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A.  § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or

manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 24th day of October, 2006.**

                                                                         _____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE